UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CRAIG S. FEHLHABER,

                             Plaintiff,                6:09-CV-1380

            v.

BOARD OF EDUCATION OF THE UTICA CITY
SCHOOL DISTRICT; and JAMES WILLIS,
Superintendent of Schools of the Utica City
School District,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

O'HARA, O'CONNELL LAW FIRM      DENNIS G. O'HARA, ESQ.
Attorneys for Plaintiff              STEPHEN CIOTOLI, ESQ.
7207 East Genesee Street
Fayetteville, NY  13066

OFFICE OF FRANK W. MILLER        FRANK W. MILLER, ESQ.
Attorneys for Defendants          BRYAN N. GEORGIADY, ESQ.
6575 Kirkville Road
East Syracuse, NY  13057


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      On December 10, 2009, plaintiff Craig S. Fehlhaber ("plaintiff" or "Fehlhaber") filed

this action against the Board of Education of the Utica City School District and

Superintendent of Schools, James Willis ("Willis") (collectively "defendants"), asserting six

claims arising from an alleged conspiracy to terminate his employment.  An October 29,

2010, Memorandum–Decision and Order granted in part and denied in part defendants'

motion for judgment on the pleadings.  Fehlhaber v. Bd. of Educ., 2010 WL 4386936

(N.D.N.Y. Oct. 29, 2010).  Plaintiff's stigma-plus, due process, and injurious falsehood

claims were dismissed, but his free speech, breach of contract, and defamation claims

survived.  Id. at *7.

On March 29, 2011, United States Magistrate Judge George H. Lowe granted

plaintiff's motion to file an amended complaint, which contains the following federal causes

of action brought pursuant to § 1983:  (1) deprivation of plaintiff's liberty interest in his

professional reputation ("stigma-plus"); (2) violations of plaintiff's substantive and

procedural due process rights; and (3) violation of plaintiff's right to free speech.[1]  Plaintiff

brings the following state law causes of action:  (4) breach of contract; and (5) defamation

against Willis.

On February 17, 2012, plaintiff and defendants both filed a motion for summary

judgment.  These motions have been fully briefed.  Defendants subsequently filed a

motion to strike various portions of plaintiff's attorney affirmations that accompanied his

motion for summary judgment.  Plaintiff has responded to this motion.

Oral argument was heard on June 22, 2012, in Utica, New York.  Decision on all

motions was reserved.

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Fehlhaber began

working as the Superintendent of Buildings and Grounds for the Utica City School District

---

[1]  Plaintiff was permitted to re-assert his stigma-plus and due process claims based on developments in the case—specifically the abolishment of his position and termination of his employment while the motion for judgment on the pleadings was pending.

("the District") in March 1998 and was permanently appointed to this position on March 26, 2002.[2]  On July 12, 2006, he and the District entered into a written employment agreement, which the District drafted.  Plaintiff alleges, and defendants deny, that in late-2006 and 2007 three District administrators conspired with Dr. Victor Pellegrino ("Dr. Pellegrino"), a member of the Utica City Board of Education ("the Board"), to terminate plaintiff's employment.[3]

In November or December 2006, Dr. Pellegrino held a press conference to announce a new District capital project.  Plaintiff alleges that at this event, Dr. Pellegrino dramatically waved a newspaper article concerning a previous District project that was tainted by a state commission's investigation of financial mismanagement.  He then, allegedly, vowed to prevent similar mismanagement of the new project.  Fehlhaber was known to be directly involved in the management of the previous project and was precluded from several important aspects of the new project.

From the inception of his employment in 1998 until April 2007, Fehlhaber did not receive any negative employment evaluations or critical memoranda.  On April 12, 2007, however, he was suspended pursuant to section 75 of the New York Civil Service Law and charged with sixteen violations, comprising approximately 160 specific instances of misconduct.  An administrative hearing was conducted from May 2007 through August

---

[2]  The title of this position was originally "Supervisor" of Buildings and Grounds but was changed in 2000.

[3]  The three District administrators include: Marilyn Skermont, then-Superintendent of Schools; Frank Conestabile, then-Director of Labor Relations and District Services; and Maureen Albanese, School Business Official.

2008.[4]  In a written decision dated December 27, 2008, the hearing officer found plaintiff guilty of six specific instances of misconduct and recommended that he remain suspended until February 17, 2009.[5]  Pursuant to the employment agreement, this decision was binding on the parties.  Neither plaintiff nor the District appealed the hearing officer's decision.  Plaintiff collected his regular salary during the pendency of his suspension except for sixty days, which was deemed disciplinary unpaid leave.

On January 1, 2009, Willis replaced Marilyn Skermont as Superintendent of Schools.  When plaintiff returned to his position on February 17, 2009, Willis reduced his previous job responsibilities, limited his involvement in the ongoing capital project, and transferred a variety of his duties to Michael Delia, the District's Maintenance Foreman ("Delia") who had assumed many of the duties in Fehlhaber's absence.  Plaintiff was advised that he now had no supervisory authority over anyone in the District other than his secretary.  Plaintiff alleges that he was also forbidden to speak with anyone other than his secretary and was prohibited from speaking at Board meetings and professional functions. Also on plaintiff's first day back, Willis allegedly told him, in front of other employees, "no one in the District has confidence in you."  Am. Compl. ¶ 82.[6]

_____

[4]  This hearing process included thirty scheduled sessions.  Twenty-eight witnesses testified, and over 200 exhibits were received into evidence.

[5]  The hearing officer specifically noted:  "As there were over 160 charges filed by the district, I will not make a decision on each and every charge.  I will make my decision on what I consider the major issues that have been presented and argued by both parties."  Ciotoli Affirmation, Feb. 17, 2012, Ex. M, 2 (The pagination corresponds to the page numbers as assigned on CM/ECF.  This convention will be used throughout the order for citations to exhibits.).

[6]  Later in the amended complaint, plaintiff alleges that this statement was made "during [a] meeting in August 2009."  Am. Compl. ¶ 126(d).  This appears to be a typographical error as the first notice of claim and the original complaint alleged it was uttered on the date of plaintiff's reinstatement, which was February 17, 2009.

In a February 18, 2009, newspaper article Willis, referring to plaintiff, was quoted as stating:  (1) "The job was not being done correctly before, I don't want the district going back to a position where the work is not being done correctly"; and (2) "We'll structure the department to ensure all work is performed correctly.  Maybe the job duties were too broad and maybe that's why (Fehlhaber) failed."  Am. Compl., Ex. C.  Plaintiff further alleges that during an August 2009 meeting, Willis exclaimed:  "It was shoddy workmanship and borderline criminal behavior.  Weren't you responsible for this?  I don't give a God damn about statutes of limitations, I am going to have this investigated."  Am. Compl. ¶ 43(d).

In early-September 2009 plaintiff attended a meeting of the New York State Association for Superintendents of School Buildings and Grounds.  He spoke critically of the District and aired personal grievances to attendees of this meeting.  On Sunday, September 20, 2009, plaintiff contacted the Superintendent of Oneida–Madison County BOCES without pre-approval from Willis.  During this phone call, plaintiff complained about communication problems he was experiencing with a BOCES employee, Joe Muller ("Muller").  On September 23, 2009, Willis had a disciplinary meeting with plaintiff regarding his comments at the meeting and his phone call to the BOCES superintendent. The following day Willis issued a "counseling memorandum" to plaintiff documenting this meeting.  Ciotoli Affirmation, Feb. 17, 2012, Ex. Z.

Throughout his tenure as superintendent, Willis issued weekly "bulletins" to the Board highlighting issues important to the District.  Bulletins from January 30 through September 25, 2009, indicate that plaintiff's return and job responsibilities were discussed numerous times.  These documents also show that Willis and the Board communicated

with the Civil Service Commission regarding a proposal to create a "Director of Buildings and Grounds" and an "Assistant Director of Buildings and Grounds" positions or, in the alternative, co-directorships.  On June 25, 2009, the District received notice that its proposal had been denied.

Thereafter, the Board authorized a new Director of District Operations and Safety position.  In November 2009, upon Willis's recommendation, the District hired Muller[7] to fill this position.  Plaintiff alleges that Muller did not possess the proper certifications and was hired in an attempt to further limit the need for his position.  In this position, Muller became plaintiff's direct supervisor and assumed many of the tasks that had been performed by Delia, who retired around this time.

On April 20, 2010, Willis informed plaintiff that his position was being recommended to be cut from the upcoming budget.  On May 25, 2010, the Board voted to abolish three administrators' positions, including the Superintendent of Buildings and Grounds.  On June 29, 2010, plaintiff's employment was officially terminated.  The other two administrators whose positions had been abolished were eventually rehired to fill other positions within the District.  It is undisputed that plaintiff did not receive the annual longevity payment of $1800 or a pay raise required by the employment agreement from the beginning of his suspension in April 2007 to the termination of his employment in June 2010.

Fehlhaber filed two notices of claim with the District.  The first, dated March 27, 2009, alleged due process, stigma-plus, defamation, and breach of contract claims as well

---

[7]  This is the same BOCES employee that plaintiff complained about in the September 20, 2009, phone call to the BOCES Superintendent.  Plaintiff was reprimanded by Willis for that phone call.

as a violation of New York Civil Service Law.  Plaintiff filed his second notice of claim on August 12, 2010, alleging breach of contract and a violation of New York Civil Service Law.

## III.  DISCUSSION

### A.  Motion to Strike

Defendants seek to strike various sections of attorney Stephen Ciotoli's affirmations in support of plaintiff's motion for summary judgment.  Defendants assert that these sections inappropriately contain excessive adversarial argument, personal opinion, speculation, and paraphrasing of evidence.  They further contend that striking the inappropriate sections is necessary to clarify the record in the event of a future appeal.  Plaintiff opposes and claims that the disputed sections merely summarize admissible evidence already in the record.

Courts may strike portions of an affidavit that are not based on the affiant's personal knowledge, are inadmissible, or make conclusory statements.  Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).  However, such relief is often unnecessary as courts are able to distinguish between proper and improper submissions.  See Martin v. Town of Westport, 558 F. Supp. 2d 228, 231 (D. Conn. 2008) ("Defendants should have faith, however, that the court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving [testimony] of a particular party.").

Defendants' motion to strike will be denied.  Any inappropriate portions of these affirmations will be disregarded, and only admissible evidence will be relied upon.

### B.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see

also <u>Anderson</u>, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### C. <u>Violation of Liberty Interest (Stigma-Plus)</u>

Fehlhaber alleges that defendants deprived him of his liberty interest in his professional reputation by publicly criticizing him during the course of abolishing his position and terminating his employment.  He specifically alleges that the following actions harmed his reputation:  Dr. Pellegrino's actions at the 2006 press conference; the prolonged section 75 hearing; the significant reduction in job responsibilities; Willis's quoted statements in the February 18, 2009, newspaper article; Willis's comments made in the presence of other District employees; and the bulletins Willis provided to the Board between January and September 2009.[8]  Plaintiff argues that defendants' actions have prevented him from securing employment with other school districts.

To be successful on such a claim, plaintiff must prove:  (1) the utterance of a statement that is injurious to his reputation or denigrates his competence; (2) the statement was made public; and (3) the statement was made "concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." <u>Segal v. City of New York</u>, 459 F.3d 207, 212 (2d Cir. 2006).  With regard to the temporal relationship prong, "perfect parity" between the stigma and the plus is not required.  <u>Velez v. Levy</u>, 401 F.3d 75, 89 (2d Cir. 2005).  "When government actors defame a person and—either previously or subsequently—deprive them of some tangible legal right or

---

[8]  Plaintiff also argues that the termination of his employment itself was stigmatizing.  However, he cannot rely on the negative inferences drawn by the public from his termination to make out a stigma-plus claim.  <u>See</u> <u>O'Connor v. Pierson</u>, 426 F.3d 187, 195 (2d Cir. 2005) (holding that even if "townsfolk drew negative inferences from [plaintiff's] suspension, this is not enough to make out a stigma-plus claim").  In short, plaintiff cannot simply allege that "the plus alone has created the stigma."  <u>Id.</u>

status, a liberty interest may be implicated, even though the 'stigma' and 'plus' were not imposed at precisely the same time." Id. (internal citation omitted).  This prong is satisfied if the stigma and the plus would appear connected to a reasonable observer.  Id.

In addition to the above three elements, plaintiff must show that the deprivation of his liberty interest was without due process of law.  Segal, 459 F.3d at 213.  Before non-probationary government employees can be deprived of a liberty interest by high-ranking officials with final decision-making authority, they must be provided with pre-deprivation process.  Velez, 401 F.3d at 91–92.

The parties agree that the abolishment of plaintiff's position and his termination satisfy the "plus" part of this claim.  Defendants argue that they are entitled to summary judgment because the allegedly stigmatizing statements were not made in the course of the abolishment and termination, and plaintiff failed to request a post-termination name-clearing hearing.[9]

### 1. Temporal Relationship

Defendants correctly point out that the most recent allegedly stigmatizing statement was a bulletin that Willis provided to the Board on September 25, 2009—eight months prior to the abolishment of plaintiff's position on May 25, 2010.  Although there is no bright-line rule, eight months is too attenuated for purposes of a stigma-plus claim.  See Martz v.

_____

[9]  Defendants do not challenge whether the allegedly stigmatizing statements actually injured plaintiff's reputation or denigrated his competence.  They do, however, assert that the bulletins Willis presented to the Board were not "public."  These documents were marked "CONFIDENTIAL."  See, e.g., Ciotoli Affirmation, Feb. 17, 2012, Ex. R, 30.  However, it is reasonable to infer that the bulletins were viewed by more District employees than just the seven Board members.  Indeed, Willis testified that they were distributed every Friday and were simply placed "on the top of the filing cabinets."  Georgiady Decl., Feb. 17, 2012, Ex. G, 182:12–13 ("Willis Dep.").  Further, the "Board clerk" included these bulletins in "Friday packets" that were provided to the Board members in preparation for the following week's Board meeting.  Id. at 182:16–18.  Therefore, it is probable that the information contained in the bulletins was viewed by various District employees and discussed at subsequent public Board meetings.

Inc. Vill. of Valley Stream, 22 F.3d 26, 32 (2d Cir. 1994) (allegedly defamatory statements uttered over five months after plaintiff's termination "were not made in the course of dismissal" (internal quotation marks omitted)).

However, this is an oversimplification of the facts.  Plaintiff's assertion that the allegedly stigmatizing statements were made public during an ongoing conspiracy to terminate his employment distinguishes this stigma-plus claim from the cases cited by defendants in which the statements were isolated events that occurred after the government employee had been terminated.  See id. (statement concerned matter that only came to light after the termination and, therefore, could not have been connected to it); Gentile v. Wallen, 562 F.2d 193, 198 (2d Cir. 1977) (statement was made three months after plaintiff's employment was terminated).[10]

When the record is viewed in the light most favorable to plaintiff, a reasonable observer may conclude that the effort to terminate his employment actually began in 2006 with Dr. Pellegrino's public comments implicating him in the mismanagement of funds related to a District project.  See Patterson v. City of Utica, 370 F.3d 322, 334 (2d. Cir. 2004) (jury verdict on stigma-plus claim justified by evidence of "[a] subtle campaign designed by city officials to make plaintiff the scapegoat for an episode of municipal malfeasance").  Plaintiff maintains that the prolonged section 75 hearing, initiated in April 2007 despite a lack of any prior negative employment evaluations, was a "sham . . . that included fabricated charges" brought to further besmirch his public reputation and

_____

[10]  Defendants also rely on Malapanis v. Regan, 340 F. Supp. 2d 184 (D. Conn. 2004), aff'd, 147 F. App'x 219 (2d Cir. 2005).  However, the "stigma" in this case involved a state agency's listing of a company as a "non-responsible bidder" four months prior to terminating the company's contract.  Id. at 186.  This case did not involve allegedly stigmatizing statements made public during the course of an alleged ongoing conspiracy by government officials to terminate an employee.

terminate his employment.  Am. Compl. ¶ 80.  He asserts that defendants, unhappy with the section 75 hearing officer's decision to reinstate him, schemed to ultimately terminate his employment by isolating him, reducing his duties, preventing him from accomplishing what duties he retained, and restructuring the administration to eliminate the need for his position.

It is undisputed that when Fehlhaber returned to work in February 2009, Willis reduced his job responsibilities, advised him that he had no supervisory authority over anyone but his secretary, and forbid him from issuing staff directives without prior approval.  Further, during 2009, the District petitioned the Civil Service Commission to create a "Director of Buildings and Grounds" and an "Assistant Director of Buildings and Grounds" positions or, in the alternative, co-directorships.  This request was denied, which "frustrated and surprised" Willis.  Willis Dep. at 115:4.  Thereafter, the District created a new Director of District Operations and Safety position and hired Muller to fill this vacancy in November 2009.  Plaintiff maintains that Muller did not possess the required certifications and qualifications for this job.

Defendants maintain that the restrictions placed on plaintiff were necessary and justified given the six infractions of which he had been found guilty during the section 75 hearing.  They further argue that the restructuring of the administration was an effort by Willis—a new superintendent—to streamline the management of the District and combat economic realities of a budget shortfall.  Willis also maintains that the idea to abolish plaintiff's position was not considered until January 2010.  With respect to Muller's qualifications for the newly created position, defendants assert that he was in the process of obtaining the necessary certifications when he was hired in November 2009.

Defendants' interpretation of the facts is reasonable.  It is equally reasonable, however, to conclude that their actions were part of a concerted ongoing effort to push Fehlhaber out of the District.  Indeed, Willis firmly noted that he believed plaintiff "absolutely" should have been fired after the section 75 hearing.  Id. at 157:17–19. Moreover, it is undisputed that plaintiff was the only administrator whose employment was, ultimately, terminated as a result of the District reorganization.

These competing reasonable interpretations of the facts present issues of material fact as to whether the allegedly stigmatizing statements were made public during the overall course of the abolishment of plaintiff's position and in connection with the termination of his employment.

### 2. **Adequate Process**

At oral argument, defendants noted that their primary defense to the stigma-plus claim is that plaintiff had adequate process available; to wit, a post-termination name-clearing hearing pursuant to Article 78.  However, such post-termination due process is only sufficient in the context of "at-will" employment.  See Segal, 459 F.3d at 214–15.  In the absence of an emergency situation, non-probationary government employees are entitled to process before they are deprived of a liberty interest by actions of high-ranking officials with final decision-making authority.  Velez, 401 F.3d at 91–92; DiBlasio v. Novello, 344 F.3d 292, 302–04 (2d Cir. 2003).

Fehlhaber was not an at-will employee and, according to his employment contract, could only be terminated "for cause."  Am. Compl., Ex. A, ¶ 14(a).  The persons who allegedly engaged in a conspiracy to terminate his employment and made the allegedly stigmatizing statements in the course thereof include Board members and Superintendent

- 13 -

Willis.  They are high-ranking officials in the District who, according to Willis's own testimony, possess the authority to alter job duties and eliminate employment positions.  It is undisputed that plaintiff was not provided with any pre-deprivation due process.

Accordingly, both motions for summary judgment will be denied as to the stigma-plus claim.

### 3.  Damages

In terms of remedy for the stigma-plus claim, Fehlhaber may not seek reinstatement.[11]  He may recover for compensatory damages that he can show were actually caused by the deprivation of his liberty interest.[12]  See Patterson, 370 F.3d at 337–38 (where a name-clearing hearing is an inappropriate or insufficient remedy, compensatory damages may be awarded in addition to nominal damages for the deprivation itself).

Moreover, plaintiff alleges that the harm to his professional reputation has prevented him from securing future employment.  In order to be entitled to damages for the loss of future employment, plaintiff must show that defendants' actions actually foreclosed future employment opportunities—unless the stigmatizing statements "obviously implicate [his] good name or honor, such as criminal allegations."  Id. at 330 n.1; see also Donato v. Plainview–Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d

---

[11]  Indeed, he does not seek reinstatement in this action.  Plaintiff unsuccessfully pursued this remedy in state court.  See Fehlhaber v. Bd. of Educ., 2012 WL 2164474 (N.Y. App. Div. 4th Dep't June 15, 2012) (affirming the dismissal of Fehlhaber's Article 78 petition seeking to compel the Board to appoint him to the position of Maintenance Foreman or, in the alternative, allow him to resume a teaching position).

[12]  In addition to his loss of salary and compensation from the District, plaintiff claims to have suffered emotional damages related to the embarrassment, humiliation, and mental anguish caused by defendants' conduct.  Am. Compl. ¶¶ 89, 91.

Cir. 1996) ("[A] government announcement that it has fired an employee for incompetence or because [he] can no longer do the job is considerably graver and carries more potential for future disqualification from employment than a statement that the individual performed a job poorly." (internal quotation marks omitted)).  The allegedly stigmatizing statements at issue do not obviously implicate Fehlhaber's honor or directly accuse him of criminal behavior.  Nor did defendants announce that he had been fired for incompetence or that he could no longer do the job.  Therefore, in order for plaintiff to recover damages for the loss of future employment opportunities, he must establish that defendants' conduct actually foreclosed such opportunities.

### D.  Due Process

In the amended complaint, plaintiff combines notions of both procedural and substantive due process into one claim.  He alleges that defendants deprived him of both while abolishing his position and terminating his employment.

#### 1.  Procedural Due Process

Defendants concede that as a permanent civil service employee, plaintiff had a protected property interest in his continued employment.  The issue thus becomes whether plaintiff was provided with adequate notice and a meaningful opportunity to be heard.  See O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir. 1994).

#### a.  Notice

On April 20, 2010, Willis met with plaintiff and advised that "his position was being recommended to be cut from the 2010–11 school year budget."  Willis Aff., Ex. M.  Willis also advised that if the Board adopted his proposed staff and budget cuts, plaintiff's employment would end on June 30, 2010.  The following day plaintiff submitted a

memorandum to Willis in which he noted:  "On Tuesday afternoon, April 20, 2010, at 3:00 p.m. in your office, you verbally informed me that you were cutting my position as Superintendent of Buildings & Grounds from the 2010–2011 Budget."  Georgiady Decl., Feb. 17, 2012, Ex. M.  Plaintiff faxed this memorandum to his attorney on April 22, 2010. The Board voted to abolish plaintiff's position on May 25, 2010—over a month after his meeting with Willis.  Therefore, plaintiff was provided with sufficient notice.  Cf. Cifarelli v. Vill. of Babylon, 894 F. Supp. 614, 621 (E.D.N.Y. 1995) (finding insufficient notice where employee was advised of the pending abolishment of his position "no more than a 'few hours' before the Village's decision was formalized"), aff'd, 93 F.3d 47 (2d Cir. 1996).

### b. Pre-Termination Hearing

Where the decision to abolish a public employee's position is made by high-ranking officials who have final decision making authority, the aggrieved employee is generally entitled to a pre-termination hearing.  Dwyer v. Regan, 777 F.2d 825, 832–33 (2d Cir. 1985).  Yet, a municipal entity may "decide to make its operations more efficient by abolishing or consolidating positions or by implementing a considered substantial reduction in its work force."  Id. at 833, modified by, 793 F.2d 457, 457 (2d Cir. 1986).  In such a situation, the municipality need not routinely provide pre-termination hearings for employees whose positions are eliminated.  Id.

However, where it is alleged that defendants targeted a single employee for termination and that employee "protests the notice of elimination of his position and contends that it is but a sham and pretext for the deprivation of his property right," defendants must grant a pre-termination hearing to be conducted by a fact-finder outside the agency responsible for the challenged action.  Id.  Importantly, the employee bears the

responsibility to request such a hearing.  <u>See id</u>. (noting that if, on remand, plaintiff "cannot show that he made a timely request for a pretermination hearing, he is not entitled to recover for the failure to receive such a hearing").

The decision to abolish Fehlhaber's position was made by Willis and the Board— high-ranking District officials with final decision making authority.  However, plaintiff failed to protest the notice of elimination or request a pre-termination hearing, despite the fact that he and his attorney knew—over a month in advance—that the Board was considering abolishing his position.  The only communication among plaintiff and the District between his April 20 meeting with Willis and the May 25 Board vote was his April 21 memorandum to Willis and a letter from his counsel to Willis.  The memorandum merely requested a copy of notes taken during the April 20 meeting.  Counsel's letter noted that plaintiff wished to "bump" a less-senior employee pursuant to Civil Service Law section 80 upon the abolishment of his position.  Willis Aff., Ex. P.  Neither document sought a pre-termination hearing or alleged that the proposed abolishment of the Superintendent of Buildings and Grounds position was merely a pretext to terminate plaintiff's employment. Further, during his deposition, plaintiff acknowledged that he attended the Board meeting at which his position was eliminated, but he did not speak out against it.

At oral argument, plaintiff's counsel acknowledged that he never explicitly requested a pre-termination hearing.  Plaintiff instead argues that the two notices of claim he filed with the District provided adequate notice of his assertion that the abolishment was a sham.  However, the first notice of claim was filed before he even received notice of the pending abolishment, and the second notice of claim was filed after his employment

had been terminated.  These notices do not constitute a request for a pre-termination hearing.

### c. Post-Termination Hearing

Even if an employee did not timely request a pre-termination hearing, he is nevertheless entitled to a post-termination hearing to address his claim that the abolishment of his position was a sham.  Dwyer, 777 F.2d at 834 (noting that a post-termination proceeding is "more valuable" since subsequent events, i.e. the transfer of duties to a new employee, may provide evidence of pretext).

At oral argument, plaintiff's counsel conceded that plaintiff never formally requested a post-termination hearing to challenge the abolishment of his position as a pretext to terminate his employment.  Although Fehlhaber initiated an Article 78 proceeding after his termination, he apparently did not include a claim that the abolishment of his position was a sham.  In fact, the amended complaint specifically indicates that the matters included in the Article 78 petition "(bumping rights and tenure rights) are substantively different from this action (abolishment of plaintiff's position)."  Am. Compl. ¶ 65; see also id. ¶ 64 ("[D]efendants have also refused to afford or recognize plaintiff's demand to bumping rights into a lower level civil service position or to return from a leave of absence to his tenured teaching position within the District, issues which are *explicitly excluded* as issues for this action.").  Instead of challenging the abolishment of his position in the Article 78 petition, Fehlhaber is challenging the District's failure or refusal to move him to the next less-senior civil service position.  Plaintiff does not allege that the Article 78 process is inadequate to challenge the abolishment of his position.

In sum, plaintiff received sufficient notice of the pending abolishment of his position.  However, he did not protest or request a pre-termination hearing.  He similarly failed to challenge the abolishment in the available post-termination Article 78 proceeding.  Accordingly, defendants' motion for summary judgment will be granted as to the procedural due process claim.

## 2.  **Substantive Due Process**

In the amended complaint, Fehlhaber alleges that defendants deprived him of his right "to earn a living in his chosen profession" in an egregious, outrageous, and conscience-shocking manner.  Am. Compl. ¶¶ 97, 100.  However, rights related to employment are not fundamental constitutional rights protected by substantive due process.  See Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198, 99 S. Ct. 1062, 1064 (1979) (per curiam) (comparing employment interests to those "resembling the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life" (internal quotation marks omitted)); Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) (routine state-law contractual rights are not worthy of substantive due process protection).

Accordingly, defendants' motion for summary judgment will be granted as to the substantive due process claim.

## E.  **Free Speech**

Plaintiff alleges that Willis imposed a blanket restriction on his right to speak publicly without prior approval.  Specifically, plaintiff claims that he was forbidden to speak: (1) to the Board; (2) to other District employees, except for his secretary; (3) to administrators in other districts; and (4) at meetings of a professional organization to which

he belonged.  Defendants maintain that the only restrictions placed on plaintiff's speech related to communications made during the course of his public employment.

A public employee does not surrender his First Amendment rights by virtue of his employment.  Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957 (2006).  He instead retains the right "to speak as a citizen addressing matters of public concern."  Id. However, a government employer may restrict an employee's speech "that has some potential to affect the entity's operations."  Id. at 418, 126 S. Ct. at 1958.  Specifically, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Id. at 421, 126 S. Ct. at 1960. Therefore, restricting such speech does not violate the employee's free speech rights.  In short, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."  Id. at 421–22, 126 S. Ct. at 1960.

### 1. Speech to the Board and District Employees

Plaintiff does not identify any evidence to establish an issue of material fact as to whether defendants specifically forbade him from speaking to members of the Board or other District employees.  When asked whether Willis ever directed him not to speak with "other employees of the school district other than [his] secretary" or gave him "direction or instruction as to what [he] could or could not say to administrators in the school district," plaintiff answered:  "I don't recall."  Georgiady Decl., Feb. 17, 2012, Ex. J, 221 ("Fehlhaber Dep.").  Further, when asked if anyone "ever told you you can't address the Board of

Education in a public setting," plaintiff replied:  "Not to my knowledge."  Id. 222:22–24.  He also acknowledged that he did, in fact, address the Board on several occasions in 2009.

A September 1, 2009, counseling memorandum from Willis advised plaintiff that he was not to attend committee meetings unless Willis assigned him to such committees. See Ciotoli Affirmation, Feb. 17, 2012, Ex. Y.  It also prohibited plaintiff from writing staff directives without prior authorization but permitted him to continue "providing information to staff" concerning projects to which he was assigned.  Id.  Willis acknowledges informing plaintiff that "he was not to give direction to staff."  Willis Dep. 246:18.  However, these restraints are clearly related to speech conducted in plaintiff's official capacity and, therefore, are not protected by the First Amendment.

Plaintiff does not point to any evidence in the record to establish a disputed issue of material fact as to whether he was ever restricted from speaking to the Board or District employees on matters other than those pursuant to his official duties.

## 2.  Speech to Outside District Administrators

It is undisputed that plaintiff contacted Howard Mettelman, the Superintendent of Oneida–Madison BOCES ("Mettelman"), by phone on Sunday, September 20, 2009, without pre-approval from Willis.  Shortly thereafter, Mettelman contacted Willis to complain about this call.  Willis called plaintiff into a meeting on September 23, 2009, and reprimanded him for contacting Mettelman on a weekend about District matters.  Willis issued a counseling memorandum documenting this meeting and advising Fehlhaber not to engage in similar conduct in the future.

Plaintiff asserts that this was a friendly, personal call protected by the First Amendment.  This is unpersuasive.  In the counseling memorandum, Willis specifically

asserts that Mettelman "emphatically notes that your call was not a friendship call, but rather one pertaining to a business matter."  Ciotoli Affirmation, Feb. 17, 2012, Ex. Z. Moreover, plaintiff admitted that he and Mettelman had a "professional relationship, because we had been on some committees together."  Fehlhaber Dep. 198:3.  In response to the open-ended question, "what did you talk to him about?" plaintiff answered: "An issue about fire safety" and "setting up training sessions" in the District.  Id. at 198:6–11.  Plaintiff explained that Willis had assigned him to organize this training, and he was having communication problems with one of Mettelman's employees[13] who was to conduct the training.  Id. at 198:11–13.  He contacted Mettelman directly to complain about the poor communication.  Id. at 199:14–17.

Therefore, the only reasonable conclusion is that plaintiff's entire phone call to Mettelman stemmed from his official duties as Superintendent of Buildings and Grounds, and defendants' restriction on similar future communication did not implicate the First Amendment.

### 3. **Speech at a Professional Organization Meeting**

Also at the September 23, 2009, meeting, Willis reprimanded plaintiff for comments he made at a meeting of the New York State Association for Superintendents of School Buildings and Grounds.  Plaintiff acknowledges speaking critically about the District and airing personal grievances at this meeting but asserts that he was not acting as a public official at this event.  This too is without merit.  The event took place during business hours, in a neighboring school district's building, and was a meeting of Superintendents of

---

[13]  That employee was Muller, who was later hired by the District to a new position as plaintiff's direct supervisor.

School Buildings and Grounds from around the area.  As this is not an organization that private citizens may join, plaintiff could not have been acting as a citizen.  See Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir.) (public school teacher spoke as an employee where speech was made in the form of internal grievance forms "for which there is no relevant citizen analogue"), cert. denied, 131 S. Ct. 444 (2010).

Plaintiff's attendance at and speech during this event was therefore a direct result of his professional responsibilities.  When asked whether attending such meetings was one of his job duties, plaintiff answered, "I guess, yes."  Fehlhaber Dep. 142:10–12; see also id. at 142:13–15 ("Q:  What was your role there in going to those meetings?  A:  I was Superintendent of Buildings and Grounds.").

In short, the record indicates that Willis drew a distinction between speech made by Fehlhaber during the course of his official functions and that made during personal conversations with peers and friends.  The notes and memoranda show that Willis only sought to restrain the former category of speech.  In his deposition, plaintiff evidences an understanding of this distinction.  See id. at 216–17 ("Q:  He didn't tell you you couldn't have any conversation with them at all.  He was telling you that when you're at the meeting and there's official business being conducted, you're to do District business, not personal business; is that correct?  Is that what he told you?  A: That's what he's saying here, yes.").

Accordingly, defendants' motion for summary judgment will be granted as to the free speech claim.

### F.  Breach of Contract

Plaintiff alleges that defendants breached the employment agreement by failing to

provide pay raises and longevity payments, and by stripping his job duties.[14]  Defendants

concede that plaintiff was not provided with pay raises and longevity payments after his

suspension in April 2007, but they assert that this claim must be dismissed because he did

not include it in the March 27, 2009, notice of claim.  In the alternative, defendants argue

that the contract is ambiguous and that plaintiff breached first by failing to perform his job

duties competently.

### 1.  Notice of Claim

Before initiating a legal action against a school district or officer thereof, a potential

plaintiff must first present a notice of claim to the district's governing body within three

months after accrual of such claim.  N.Y. EDUC. LAW § 3813(1).  This notice requirement is

designed "[t]o enable authorities to investigate, collect evidence and evaluate the merit of

a claim."  Brown v. City of New York, 95 N.Y.2d 389, 392–93 (2000).  An adequate notice

of claim allows the governmental entity to examine the claim to determine if it "should be

settled or satisfied without subjecting the parties to costly litigation."  Mroz v. City of

Tonawanda, 999 F. Supp. 436, 453 (W.D.N.Y. 1998).

Defendants rely on P.J. Panzeca, Inc. v. Board of Education, 29 N.Y.2d 508

(1971), which, they argue, requires a notice of claim for breach of contract to specify an

amount of damages and provide the means of computation of that amount.  However, that

case simply noted that "the critical element in a verified claim in a contract action is the

---

[14]  The breach of contract claim in the amended complaint does not specifically include allegations related to the reduction of job duties.  However, the factual allegations elsewhere in the document provide sufficient notice of this allegation.  Plaintiff also alleges that the contract remains in effect pursuant to the automatic renewal clause in paragraph 3(c) of the contract because his employment was never formally terminated in writing.  This argument is without merit as the parties agree his employment was formally terminated on June 29, 2010.

monetary demand and some suggestion at least on how the sum is arrived at or damages incurred."  Id. at 509.  Moreover, the plaintiff in P.J. Panzeca never filed a formal notice of claim and instead argued that defendants were provided with adequate notice via paperwork it filed in support of an order to show cause for an injunction.  Id.  This paperwork, however, completely lacked any indication of what damages plaintiff incurred. Id. at 510.

Fehlhaber filed a formal notice of claim on March 27, 2009.  This document included a claim for "breaching the employment contract between Claimant and the Board" and specifically identified the contract as the "Employment Agreement with the Board dated as of July 12, 2006."  Georgiady Decl., Feb. 17, 2012, Ex. C, ¶¶ 1, 14.  In the notice, plaintiff referenced letters he had written to Willis regarding, inter alia, "the receipt of contractually mandated benefits."  Id. ¶ 60.  He also complained that Willis "substantially" altered his job duties and responsibilities "in contravention of the clear mandates of Claimant's employment contract."  Id. ¶ 74.  This language is sufficient to put defendants on notice that Fehlhaber alleged they breached his employment contract by reducing his job duties and failing to provide payments and benefits outlined in the contract.  The pay increases, longevity payments, and other benefits are clearly detailed in the employment contract—which the District drafted.  This enabled the District to conduct an investigation of these matters and readily determine what "mandated benefits" plaintiff referred to in the notice of claim.

Therefore, the March 27, 2009, notice of claim satisfied its purposes with respect to plaintiff's breach of contract claim.

### 2.  **Merits of the Breach of Contract Claim**

It is undisputed that plaintiff did not receive the annual pay increases and longevity payments required by the employment contract.  Defendants assert that plaintiff was not entitled to these payments after his April 2007 suspension because he materially breached the contract.  The pertinent portion of the contract states:

> 4.  Building Superintendent's Duties and Responsibilities.
>   (a)  The Building Superintendent shall perform all the duties of the position as outlined in the Civil Service Specifications for said position on file with the District, and such other related duties as may be assigned by the Superintendent and/or Board from time to time.
>   (b)  The Building Superintendent shall attend all District meetings, Board meetings, Board committee meetings, Board workshops and public hearings as required by the Superintendent of Schools and/or the Board of Education.
>   (c)  The Building Superintendent agrees to perform all of the duties that may be required of him to the best of his ability, experience and talent to the reasonable satisfaction of the Superintendent of Schools and the Board of Education.

Am. Compl., Ex. A, ¶ 4.

The parties dispute the meaning of paragraph 4(a).[15]  Plaintiff maintains that the word "shall" requires the District to allow plaintiff to perform all duties outlined in the civil service job description.  Defendants argue that this paragraph simply requires plaintiff to perform such duties and does not prevent them from restricting his duties.

Whether a contract provision is ambiguous is a question of law to be decided by a court.  Mellon Bank, N.A. v. United Bank Corp. of N.Y., 31 F.3d 113, 115 (2d Cir. 1994).  The contract's language is ambiguous "if it is capable of more than one meaning when

---

[15]  This appears to be the only paragraph that is currently disputed.  The parties do not mention the contract's termination clause that was the subject of debate at the motion for judgment on the pleadings stage.

viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted).  If the contract is deemed ambiguous, and there is relevant extrinsic evidence related to the parties' intent, the provision's interpretation "becomes a question of fact and summary judgment is inappropriate."  Mellon Bank, N.A., 31 F.3d at 116.

Paragraph 4(a) is not ambiguous.  Its heading clearly announces that what follows are the "Building Superintendent's Duties and Responsibilities."  Further, subsections (a) and (b) allow the Superintendent and/or the Board to assign plaintiff additional duties as needed and require him to attend meetings.  The contract thus contemplates discretion on the part of the administration with respect to plaintiff's employment responsibilities.  There is nothing in the contract prohibiting the District from limiting plaintiff's duties.  Therefore, defendants' interpretation is the only reasonable one.[16]

However, whether plaintiff breached paragraph 4(c) of the contract by failing to perform his duties "to the best of his ability, experience and talent to the reasonable satisfaction of the Superintendent of Schools and the Board of Education" is an issue of material fact to be decided at trial.  If it is ultimately determined that plaintiff did breach the contract, then his claim that defendants breached the contract thereafter by failing to provide mandated salary increases and longevity payments would be without merit.  If, on the other hand, it is determined that he did not breach the contract, then he is entitled to

---

[16]  Accordingly, Fehlhaber cannot seek direct damages for the loss of specific job duties. However, the significant decrease in job responsibilities remains relevant to the stigma-plus claim with regard to the alleged conspiracy to isolate plaintiff, decrease his effectiveness, and abolish the need for his position altogether.

damages for the loss of contractually-mandated annual pay increases and longevity payments.

Accordingly, both parties' motions for summary judgment will be denied as to the breach of contract claim.

### G. Defamation (against Willis only)

Fehlhaber asserts that the following four statements made by Willis were defamatory:

(1)  "The job was not being done correctly before, I don't want the district going back to a position where the work is not being done correctly."

(2)  "We'll structure the department to ensure all work is performed correctly. Maybe the job duties were too broad and maybe that's why (Fehlhaber) failed."

(3)  "It was shoddy workmanship and borderline criminal behavior.  Weren't you responsible for this?  I don't give a God damn about statutes of limitations, I am going to have this investigated."

(4)  "No one in the District has confidence in you."

In New York, the elements of a defamation claim include:  (1) a false and defamatory statement of fact; (2) regarding plaintiff; (3) published to a third party; (4) made with "the applicable level of fault on the part of the speaker"; and (5) causing harm to the plaintiff or amounting to defamation per se.  Albert v. Loksen, 239 F.3d 256, 265–66 (2d Cir. 2001).  Even an expression of opinion becomes actionable if the overall context of the statement "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it."  Steinhilber v. Alphonse, 68 N.Y.2d 283, 289–90 (1986).  Where, as here, the plaintiff is a public figure, he must show by clear and convincing

evidence that the statement was made with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  New York Times Co. v. Sullivan, 376 U.S. 254, 279–80, 84 S. Ct. 710, 726 (1964); Shulman v. Hunderfund, 905 N.E.2d 1159, 1161, 12 N.Y.3d 143, 147 (2009).

Defamation per se contemplates statements reasonably understood as imputing, inter alia, incompetence, unfitness to perform one's profession, or criminal activity.  Ives v. Guilford Mills, Inc., 3 F. Supp. 2d 191, 200 (N.D.N.Y. 1998) (Kahn, J.); Epifani v. Johnson, 65 A.D.3d 224, 234 (N.Y. App. Div. 2d Dep't 2009).  As the above statements call into question Fehlhaber's ability to competently perform his professional duties and imply that he engaged in criminal activity, the final element of the defamation claim is met as a matter of law.

### 1. Statements #1 and #2

In his deposition, Willis acknowledged the accuracy of the first two statements, which were quoted in a February 18, 2009, newspaper article.  As noted in the October 29, 2010, Memorandum–Decision and Order, an average reader would consider these statements, uttered by the District Superintendent, as fact.  As the Superintendent, it is implicit that Willis's remarks concerning whether plaintiff was performing his job correctly are based on facts unknown to the average reader.  Willis instead asserts that these statements were neither false nor uttered with actual malice.  He specifically argues that because plaintiff was found guilty of six infractions, he failed to perform the job correctly.

When asked during his deposition whether anything in statement #2 was false, plaintiff replied "No.  No."  Fehlhaber Dep. 153:22–24.  However, in his motion papers and at oral argument, plaintiff disputes the truth of these statements.  He notes that the

hearing officer only found him guilty of six violations and claims that Willis's statements falsely imply that plaintiff performed <u>all</u> aspects of his job incompetently.  He also points out the lack of any negative employment evaluations prior to the section 75 hearing.[17] Plaintiff thus concludes that the statements implying he failed to perform his job competently must be false and uttered with actual malice as part of a conspiracy to terminate his employment and tarnish his public reputation.  Also supporting plaintiff's claim that Willis spoke with reckless disregard for the truth is the fact that the statements were uttered only shortly after Willis began his tenure as Superintendent and on plaintiff's first day back, before any working relationship had formed between them.

This dispute presents an issue of material fact as to whether statements #1 and #2 are false and were uttered by Willis with actual malice.  Accordingly, both motions for summary judgment will be denied as to these statements.

### 2.  Statement #3

Willis argues that he is entitled to summary judgment on this statement, which was allegedly uttered at an August 2009 meeting, because it was not included in plaintiff's August 12, 2010, notice of claim.  In response, plaintiff simply asserts that the March 27, 2009, notice of claim put defendants "generally on notice" of his defamation claim.  This does not excuse his failure to include Willis's subsequent statement in a later notice of claim.  Even if the statement was included in the August 12, 2010, notice of claim, it would be untimely because the notice was filed one year after the claim accrued.  <u>See</u> N.Y.

---

[17]  Plaintiff also notes that Willis, in his deposition, acknowledged that plaintiff competently completed all tasks Willis assigned to him after his return in February 2009.  However, the allegedly defamatory statements were printed in a newspaper article the day after plaintiff's first day back.  Plaintiff's subsequent professional competence is irrelevant to the issue of whether Willis's prior statements were false.

EDUC. LAW § 3813(1) (no action may be brought against an officer of a school district unless it was first presented to the district's governing body within three months after accrual of such action).

Accordingly, Willis will be granted summary judgment as to this statement.

### 3. Statement #4

Willis asserts that he never uttered this statement, which plaintiff claims was made during a February 17, 2009, meeting.  During his deposition, plaintiff consulted seven pages of handwritten notes he took during this meeting and conceded that these notes only indicated that Willis expressed his trust in Delia—not that he specifically voiced his distrust in plaintiff.  Fehlhaber Dep. at 127–28.  Plaintiff's notes did not specifically reflect statement #4 or any other comment implying a lack of confidence in plaintiff on behalf of everyone in the District.  By expressing his faith in Delia, Willis was not making a statement about plaintiff.  Further, Willis's deposition indicates that he did in fact have confidence in Delia, rendering this statement true.  This negates the first two elements of plaintiff's defamation claim.  Plaintiff therefore fails to point to evidence in the record establishing an issue of material fact for trial.

Accordingly, Willis will be granted summary judgment as to this statement as well.

## IV.  CONCLUSION

There remains an issue of material fact as to whether the public statements made by defendants were stigmatizing and, if so, were published in connection with Fehlhaber's termination.  Plaintiff received adequate notice that his employment position would be formally abolished, yet failed to protest or request a pre-termination hearing.  Nor did he request a post-termination hearing.  Although he initiated an Article 78 hearing after his

employment was terminated, plaintiff did not challenge the abolishment of his position. Further, defendants only sought to restrict plaintiff's speech that was borne out of his professional, official duties.

With respect to the state claims, there remains an issue of material fact as to whether plaintiff materially breached the contract by failing to perform his duties in compliance with the employment agreement.  Moreover, issues of fact exist with regard to the two allegedly defamatory statements uttered by Willis and printed in the newspaper.

Therefore, it is

ORDERED, that

1.  Defendants' motion to strike portions of plaintiff's attorney affirmations is DENIED;

2.  Plaintiff's motion for summary judgment is DENIED in its entirety;

3.  Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

4.  The federal due process and free speech claims are DISMISSED with prejudice; and

5.  The following claims remain for trial:  (1) federal stigma-plus; (2) state law breach of contract; and (3) state law defamation against defendant James Willis related to the two statements that appeared in the Observer–Dispatch newspaper on February 18, 2009.

IT IS SO ORDERED.

_____
United States District Judge

- 32 -

Dated:   July 3, 2012
         Utica, New York.

The trial in this matter will begin with jury selection on Tuesday, August 14, 2012, at 9:30 a.m. at the United States Courthouse, 10 Broad Street, Utica, New York.  All pre-trial paperwork must be filed on or before Friday, August 3, 2012, at 12:00 noon.